# FEDERAL DEFENDER SERVICES
## OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant
Joseph A. Bugni, Madison Supervisor
John W. Campion
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Peter R. Moyers
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Kelly A. Welsh

517 E. Wisconsin Avenue
Room 182
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

June 27, 2018

Honorable J.P. Stadtmueller
United States District Court
Eastern District of Wisconsin
517 E. Wisconsin Avenue
Milwaukee, WI  53202

RE:   *United States v. Tina Jenkins*
      Case Nos. 18-CR-14 (JPS)

Dear Judge Stadtmueller:

In advance of Ms. Jenkins' sentencing, the defense submits this letter in support of the parties' joint recommendation that the Court impose a sentence of probation. The parties reached this recommendation after discussion and analysis of Ms. Jenkins's personal history, the offense, and related cases. This memorandum provides the Court with some of the parties' reasoning regarding their recommendation.

**Ms. Jenkins' limited criminal record and strong employment history.** The presentence report accurately notes that Ms. Jenkins has zero criminal history points. She has one prior conviction, which arose 20 years ago and resulted in a sentence of probation that she successfully completed. So instead of a long criminal history, Ms. Jenkins has a long work history, reflecting her nearly 30 years in the work force. She has worked as a motel clerk, a telemarketer, a commercial cleaner, and an aide at a group home. In recent years, she worked as a bartender, at Wal-Mart, and then for the Postal Service for roughly three years. After she quit the Postal Service, she struggled to find work for several months, but then began working at a commercial cleaning company. Ms. Jenkins, in short, has consistently worked throughout her life, and continues to work today.

**The limited nature of the offense, and Ms. Jenkins' immediate and consistent acceptance of responsibility.** Ms. Jenkins took money from letters that she knew might contain cash. But she did not steal or attempt to cash checks, and her criminal behavior went on for weeks, not months or years. After being confronted by postal inspectors, Ms. Jenkins immediately and fully confessed. Instead of looking for a new job while on leave (which would have allowed her to keep receiving benefits), she quit, recognizing that she didn't deserve to keep working for the post office. Ms. Jenkins never recanted her statement, and quickly agreed to plead guilty in this matter, accepting a felony conviction. She recognizes how serious an error she made, accepts the consequences, and is trying to avoid ever putting herself in the same personal circumstances. Ms. Jenkins has also agreed to pay the full amount of restitution owed in this case.

**The role of substance abuse in the offense, and Ms. Jenkins' independent efforts to seek help.** Ms. Jenkins was drinking heavily and regularly at the time of the offense, while also taking prescription opiates to relieve her back pain. After being caught for this offense and leaving the post office, she realized that she needed help. So without being forced or prompted by anyone else, she entered a substance abuse treatment program. *See* PSR at ¶53. She has been enrolled in this program for more than seven months, as verified by the probation office. Ms. Jenkins has found the treatment helpful, and plans to continue to receive treatment going forward. *See id.* As the parties recognized during their plea discussions, this continued treatment will help reduce Ms. Jenkins' risk of recidivism.

**Mr. Jenkins' challenging personal history.** Throughout her life, Ms. Jenkins has overcome much. Her parents split up when she was four years old, and her mother became a crack addict, who would frequently disappear only to be found days or weeks later in a drug house. Ms. Jenkins' father remarried, and his new wife resented the burden presented by Ms. Jenkins and her siblings. So when Ms. Jenkins was in her teens, her father and stepmother announced that they were moving out of Milwaukee, and told Ms. Jenkins and her two sisters that they couldn't come—there would be no room for them. On the edge of homelessness, Ms. Jenkins legally emancipated herself, got state assistance, and managed to find an apartment for herself and her two younger sisters. Ms. Jenkins then dropped out of high school after having a baby, her son Desmond, and then getting pregnant again, this time with her daughter Jasmine. So she worked and raised her kids as a poor single mother, although years later she went back to school and got a GED. Mr. Jenkins continues to serve as the head of her family, tasked with providing for her children all of her adult life. At the time of the offense, she was supporting not just herself, but also two of her adult children and one of her grandchildren. In addition, Ms. Jenkins is a widow. She was married for about a decade, but her husband died suddenly and unexpectedly from an infection caused by a surgical intervention.

In all, the offense in this matter appears highly unlikely to recur, given the consequences and Ms. Jenkins's personal history. She immediately accepted responsibility, and knowing faced the consequences including the loss of her job, a felony conviction, and a meaningful restitution order. For these reasons, and as will be further explained at the sentencing hearing, the defense respectfully requests that the Court accept the parties' joint recommendation, and sentence Ms. Jenkins to a within-guidelines sentence of probation.

Thank you for your attention to this matter.

Respectfully submitted,

/s/ *Anderson M. Gansner*

AMG/lc